IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Quian R. Britford,                  :

        Plaintiff,             :    Case No. 2:07-cv-0306

  v.                                 :    Judge HOLSCHUH

Terry J. Collins, et al.,           :

        Defendants             :

OPINION AND ORDER

This matter is before the Court on the motions for summary judgment filed by defendant Management and Training Corp. ("MTC") and defendants Blake, Booth, Brunton, Collins, Croft, Erwin, Gantly, Gonzalez-Lockhart, Lawson, Northrup, Roddy, Valentine, Vansickle, and Wessel (the "State Defendants"). Both motions were filed on August 29, 2008, together with supporting memoranda of law and evidentiary materials. The time for responding to the motions expired without the filing of a memorandum contra by the plaintiff, Quian R. Britford. On October 6, 2008, the Magistrate Judge ordered Mr. Britford to file a memorandum opposing each motion within ten days and advised him that the failure to do so could result in the dismissal of this action for failure to prosecute. No opposing memorandum has been filed to date. Because these motions, even if granted, would not dispose of the entire case, the Court will examine their merits to see if summary judgment is appropriate. Cf. Carver v. Bunch, 946 F.2d 451, 452 (6th Cir. 1991).

I.

Mr. Britford is a former state prisoner who was incarcerated at various penal institutions, including the Ohio Correctional Reception Center ("CRC"), the Pickaway Correctional Institution ("PCI"), and the Lake Erie Correctional Institution ("LAECI"), a

privately facility run by MTC.  While a state prisoner, he received treatment at the Correctional Medical Center ("CMC") on several occasions.  Mr. Britford was released from the custody of the Ohio Department of Corrections and Rehabilitation ("ODRC") on February 2, 2008, after the commencement of this lawsuit.

Mr. Britford has asserted numerous claims against MTC and various employees at ODRC, CRC, PCI, CMC, and LAECI pursuant to 42 U.S.C. §1983.  These claims encompass denial of medical care, retaliation for exercising his right to file grievances, discrimination in educational placement, and interference with his access to courts in violation of the First, Eighth, and Fourteenth Amendments to the United States Constitution.  He also maintains a cause of action for assault and battery against defendant Booth arising under state tort law.  The complaint sought both declaratory and injunctive relief; however, on February 27, 2008, the Court dismissed Mr. Britford's motion for injunctive relief on grounds that any entitlement to such relief was rendered moot by his release from custody.

## II.

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)(quoting Fed. R. Civ. P. 1).  The standard for summary judgment is found in Rule 56 of the Federal Rules of Civil Procedure:

> [Summary judgment] ... should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

Summary judgment will be granted "only where the moving

party is entitled to judgment as a matter of law, where it is quite clear what the truth is... [and where] no genuine issue remains for trial, ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962)(quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumnner, 570 F.2d 107, 111 (6th Cir. 1978). The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as the inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly
3

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollet, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided by this rule-set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing

4

party.  Anderson, 477 U.S. at 252.  Where, as here, motions for summary judgment are unopposed, the Court must still carefully review those portions of the record designated by the movants to determine the absence of a genuine issue of material fact and whether the movants are entitled to judgment as a matter of law. See Guarino v. Brookfield Twp. Trustees, 980 F.2d 399, 410 (6th Cir. 1992); Donlin v. Watkins, 814 F.2d 273, 277 (6th Cir. 1987). It is proper and sufficient, however, for the Court to rely on the facts adduced by the movants to reach this conclusion, and the Court need not comb the record from the perspective of the non-moving party.  Guarino, 980 F.2d at 410.  If the evidence advanced supports a finding that no genuine issue of material fact exists, the moving party has satisfied its burden and may appropriately be entitled to summary judgment.  Id.

III.

Mr. Britford alleges in his complaint that he suffered injuries to his head, neck, and back resulting from an automobile accident while being transported from CRC to CMC for arthroscopic knee surgery.  Despite the fact that he spent two weeks at CMC, he allegedly did not receive any medical treatment for these injuries.  After returning to CRC and filing an informal complaint for the purported denial of medical treatment, he was eventually sent to the Ohio State University Medical Center for a magnetic resonance imaging.  OSUMC placed him on pain medication, but upon returning to CRC, one or more of the State Defendants allegedly denied him this pain medication.  Mr. Britford claims that such denial constitute cruel and unusual punishment.  He also alleges that on three other occasions certain State Defendants at CRC were deliberately indifferent to his medical needs.  Mr. Britford testified in his deposition that on one of these occasions, defendant Blake, a registered nurse responsible for medical care at CRC, did not respond quickly enough when his

5

back went out during a work assignment.

Mr. Britford alleges that after his transfer to PCI, he suffered even more medical negligence by State Defendants. Specifically, he states that he was involved in an altercation with another inmate during which he sustained an injury to his right hand. Following this altercation, he was placed in disciplinary control for 21 days. During his administrative segregation, Mr. Britford contends that he was refused medical treatment for his hand injury, as well as his continued head, neck and back pain. He asserts that defendants Valentine, Lockhart, Roddey, and Wessel knew the seriousness of his injuries, but disregarded his repeated requests for treatment. He claims that by the time he was released from segregation, his hand had become infected and was swollen to the size of a baseball. At that point, he was finally placed on the doctor sick call list.

Mr. Britford also complains that on March 22, 2006, defendant Booth, by lifting up his mattress, caused him to fall out of the top bunk. As the result of the fall, he hit his head on the locker below and aggravated his exiting head, neck and back injuries. Despite the fact that the fall rendered him unconscious, defendant Booth and other corrections officers delayed medical treatment for thirty minutes.

After his transfer to LAECI, Mr. Britford alleges that MTC and other defendants refused to honor his medical restrictions. The only specific example listed in his complaint, however, was that these defendants denied him a bottom bunk.

To establish an Eighth Amendment violation, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to his or her health. Estelle v. Gamble, 429 U.S. 97 (1976); Wilson v. Seiter, 501 U.S. 294 (1991). This formulation has both a subjective and

an objective component.  <u>Dominguez v. Correctional Medical Serv.</u>, 555 F.3d 543, 550 (6th Cir. 2009).  Objectively, the medical condition at issue must be substantially serious.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).  Subjectively, the defendants accused of violating the Eighth Amendment must have acted with a state of mind that can accurately be described as "deliberate indifference."  <u>Id</u>.  Each of these components requires some elaboration.

It is not always easy to distinguish serious medical conditions from those that are not sufficiently substantial to implicate the Constitutional prohibition against cruel and unusual punishment, and the facts concerning the seriousness of an inmate's condition are frequently in dispute.  In evaluating such claims, courts have given weight to a variety of factors, including whether the condition is one that a doctor or other health care professional would find worthy of treatment, whether it significantly affects everyday activities, and whether it causes (or, if left untreated, has the potential to cause) chronic and substantial pain.  <u>See Chance v. Armstrong</u>, 143 F.3d 698, 702-03 (2d Cir. 1998); <u>see</u> <u>also</u> <u>Harrington v. Grayson</u>, 811 F.Supp. 1221, 1226-28 (E.D. Mich. 1993)(focusing on the severity of the condition, the potential for harm if treatment is delayed, and whether such a delay actually caused additional harm).

Under some circumstances, expert testimony may be needed to establish the seriousness of a medical condition, particularly if the inmate's claim is founded upon an unreasonable delay in treatment.  <u>See</u> <u>Napier v. Madison County, Ky.</u>, 238 F.3d 739, 742 (6th Cir. 2001).  In other cases, however, when the condition does not involve "minor maladies or non-obvious complaints of a serious need for medical care," but rather "an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers," expert testimony is not essential to a finding that a serious medical condition is present.  <u>Blackmore v. Kalamazoo County</u>, 390

F.3d 890, 898 (6th Cir. 2004).

As to the subjective component, in Farmer, 511 U.S. at 839, the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ." Id. at 837. Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. Id. Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

Because an Eighth Amendment medical claim must be premised on deliberate indifference, mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment is not actionable under 42 U.S.C. §1983. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994).

The Court will assume for the purposes of these summary judgment motions that Mr. Britford suffered from serious medical conditions that were treated by one or more of the defendants. In making this assumption, the Court is mindful that the plaintiff has not submitted any expert testimony to support any claimed serious medical condition even though at least part of his claim is founded upon an unreasonable delay in providing treatment. The State Defendants, however, appear not to dispute

8

that the plaintiff's medical conditions were serious, but instead focus on the subjective component of an Eighth Amendment medical claim, arguing that Mr. Britford has failed to show that they were deliberately indifferent to his serious medical needs.

The State Defendants have tendered the Affidavit of Michelle Viets, the Northeast Regional Nurse Administrator for the ODRC. Ms. Viets states that her duties include ensuring, from a nursing standpoint, that proper medical care is provided by the prison facilities located in her geographical area. She further avers that Ohio law requires the proper recording of medical visits, doctors' orders, test results, and other medical records for each inmate. She reviewed the medical record of Mr. Britford that are attached to her affidavit. Based on these records, she has constructed a chronology of Mr. Britford's treatment from April 22, 2004, to April 11, 2006, when he was transferred to LAECI. This chronology and the attached medical records evidence treatment of Mr. Britford for each of the conditions described in his complaint, including his knee surgery, the injuries to his head, neck, and back resulting from the automobile accidents, the injury to his hand caused by the altercation with another inmate, and the injuries resulting from his falling out of the top bunk.

These medical records and Mr. Britford's deposition testimony constitute the only evidence before the Court concerning the defendants' alleged deliberate indifference. After reviewing such evidence, the Court determines that the State Defendants have met their initial burden of showing that no genuine issues of material fact as to whether they were deliberately indifferent and that they are entitled to judgment as a matter of law on the plaintiff's Eighth Amendment medical claims. Mr. Britford thus was required to come forward with evidence that the State Defendants knew of and disregarded a substantial risk to his health or safety sufficient for a

reasonable jury to find the existence of deliberate indifference. Because he did not meet this burden, the State Defendants are entitled to summary judgment.

The sole allegation of deliberate indifference against MTC and its agents is the failure to honor at LAECI an alleged medical restriction that the plaintiff be assigned to a lower bunk. In his deposition, Mr. Britford conceded that this restriction was removed prior to his transfer from PCI. Accordingly, there is no evidence that MTC was aware of the lower bunk restriction when Mr. Britford was assigned the upper bunk or that such an assignment would pose an excessive risk to his health and safety. Consequently, the Court determines that no genuine issue of material fact exists with respect to MTC's alleged deliberate indifference and that this defendant, therefore, is entitled to judgment as a matter of law on the plaintiff's Eighth Amendment medical claim.

IV.

It is unclear from the complaint whether Mr. Britford is alleging a separate Eighth Amendment claim against defendant Booth for excessive force. To the extent he has done so, the State Defendants argue in their motion for summary judgment that he failed to exhaust his administrative remedies. Mr. Britford alleges in his complaint that he has exhausted all of his state and administrative remedies except where exhaustion would have been futile. He also contends that he was unavoidably prevented from exhaustion.

The Prison Litigation Reform Act of 1996 (PLRA) requires a prisoner to exhaust administrative remedies prior to filing an action in federal court. 42 U.S.C. §1997e(a). "To exhaust a claim, a prisoner must proceed through all steps of a prison or jail's grievance process, because an inmate 'cannot abandon the process before completion and claim that he has exhausted his

remedies.'" Umani v. Caruso, 2008 WL 2216283 at *5 (E.D. Mich. May 27, 2008)(quoting Hartsfield v. Vidor, 199 F.3d 305, 309 (6th Cir. 1999)). Although exhaustion is not a jurisdictional prerequisite, it is a mandatory requirement. Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999). Proper exhaustion requires an inmate to comply with an agency's deadlines. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). Failure to properly exhaust bars suit in federal court. Id. at 93 (2006). Prisoners are not required, however, to plead and prove exhaustion in their complaint, rather failure to exhaust is an affirmative defense. Jones v. Bock, 549 U.S. 199 (2007). Compliance with the grievance procedures will vary between systems and from claim to claim, "but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. at 921. Exhaustion is mandatory even if proceeding through the administrative process would appear to the inmate to be "futile." Hartsfield, 199 F.3d at 308-310. That is, "there is no futility exception to the exhaustion requirement." Umani at *6 (citing Booth v. Churner, 532 U.S. 731 (2001)).

According to the affidavit of Gary Croft, the Chief Inspector within the ODRC, Mr. Britford did not submit a notice of grievance to the Office of Chief Inspector against Warden Erwin and Inspector of Institutional Services Yakubu regarding their handling of this incident until July 7, 2006, more than three months after it allegedly occurred. This notice of grievance stated that Mr. Britford had filed an informal complaint and that Inspector Yakubu had denied the grievance on May 15, 2006, because the plaintiff had not effectively completed the first stage of the grievance process. See Exhibit T attached to Plaintiff's Complaint. Administrative Rule 5120-9-31 provides that grievances against the warden or inspector of institutional services must be filed directly with the Office of Chief

Inspector within 30 days of the event giving rise to the complaint.  The State Defendants contend, therefore, that at the latest Mr. Britford had to file his grievance against Erwin and Yakubu with Chief Inspector Croft by June 14, 2006.

The Court determines that the State Defendants have met their burden of showing that there are no genuine issues of material fact concerning plaintiff's exhaustion of his state administrative remedies.  Mr. Britford has made no showing that he exhausted such remedies or that the State Defendants prevented him from doing so.  He may not simply rely on the statements to the contrary in his complaint; nor may he rely on his assertion that exhaustion would have been futile.  See Umani, supra.  Although the failure to exhaust is an affirmative defense that must be established by the defendants, the Court is satisfied that the State Defendants have proven through the Affidavit of Gary Croft and the grievance records attached to the affidavit that Mr. Britford did not comply with the ODRC regulations governing such grievances and, therefore, failed to properly exhaust his administrative remedies with respect to the excessive force claim against defendant Booth.

V.

In his complaint, Mr. Britford claims that both of his prison transfers occurred because he exercised his constitutional right to file grievances relating to the alleged denial of medical care while incarcerated at CRC and PCI.  The State Defendants argue that Mr. Britford suffered no adverse consequences as the result of his transfer from CRC to PCI because each is a minimum security prison.  They also contend that Mr. Britford was transferred to LAECI on the basis of his request for an educational transfer and that plaintiff only disagrees with the institution selected for him to pursue the education of his choice.  Lastly, the State Defendants maintain

that the individual responsible for making the final transfer decisions is not even a party to this lawsuit.

Retaliation for the exercise of constitutional rights is itself a violation of the Constitution. To state a retaliation claim, a plaintiff must allege three elements: (1) that he or she was engaged in protected conduct; (2) an adverse action was taken against him or her that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). Retaliation claims must include a "chronology of events from which retaliation may plausibly be inferred." Ishaaq v. Compton, 900 F.Supp. 935 (W.D. Tenn. 1995) (quoting Cain v. Lane, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988)). The retaliatory filing of a disciplinary charge or other negative actions strike at the heart of an inmate's constitutional right to seek redress of grievances, the injury to this right inheres in the retaliatory conduct itself. Id. "An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000).

Mr. Britford has not made any showing that he suffered an adverse action that would deter a prisoner of ordinary resolve from exercising his First Amendment right to file grievances. There is no evidence that he faced a disciplinary charge for seeking redress of his allegedly inadequate medical care or that he was labeled as an "expensive and nagging inmate," as he charged in his complaint. The fact that both CRC and PCI are minimum security institutions, if anything, indicates a lack of negative treatment. It appears that Mr. Britford is relying solely on the timing of the alleged transfers, i.e. that the transfers took place after he filed grievances. But timing alone

is simply insufficient to establish a "chronology of events from which retaliation may plausibly be inferred." Ishaaq, supra. Transfer to a different prison facility, even one with more burdensome conditions, is "within the normal limits or range of custody which the conviction has authorized the State to impose." Meachum v. Fano, 427 U.S. 215, 225 (1976).

The undisputed facts demonstrate that it was Mr. Britford's own request to avail himself of educational opportunities within the Ohio prison system that led to his transfer from PCI to LAECI. While he may have subsequently objected to the geographical location of the facility, he does not contend that LAECI lacked the educational programming he sought. Accordingly, there is nothing in the record to suggest that the transfer was motivated by anything other than Mr. Britford's request.

Furthermore, Mr. Britford has not adduced any evidence that the defendants whom he blames for the transfers had anything to do with them. The only evidence before the Court consists of the affidavit of William Eleby, the Chief of the Bureau of Classification and Identification for the ODRC. Mr. Eleby is not a defendant and is not mentioned in the complaint. In his affidavit, he states that he is the person responsible for assigning inmates to the various institutions in the Ohio prison system. For all of these reasons, the Court determines that there are no genuine issues of material fact concerning plaintiff's retaliation claims and that the State Defendants are entitled to judgment as a matter of law.

VI.

Mr. Britford, who is African American, alleges that MTC and other defendants improperly used race as a factor in placing individual inmates into educational programs and thereby denied him the opportunity to pursue those programs in violation of the Equal Protection Clause of the Fourteenth Amendment. He claims

that while Caucasians are directly and easily enrolled in classes, blacks and Hispanics, who comprise 70% of the prison population, are arbitrarily placed on a waiting list, denied school transcripts and other educational records, and required to take the Tests of Adult Basic Education even after they are qualified for their desired program.  MTC argues that Mr. Britford's equal protection clause fails because he purposefully failed the TABE by marking answers he knew to be incorrect.  MTC contends that plaintiff's performance on the TABE, and not race, caused him to be excluded from the educational classes.

The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV §1.  The clause is fundamentally a mandate that all persons similarly situated ought to be treated alike.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Disparate treatment is thus the threshold element of an equal protection claim.  Scarbrough v. Monroe County Bd. of Educ., 470 F.3d 250, 260 (6th Cir. 2006).  Where disparate treatment is not shown to exist, the Court need not engage in any further analysis.  See Glover v. Johnson, 198 F.3d 557, 561 (6th Cir. 1999).

In this case, Mr. Britford has not come forward with any evidence that he was placed on a waiting list at all, much less on account of his race.  Moreover, while Mr. Britford was apparently required to take the TABE prior to placement in an educational program, he has not shown that other similarly situated inmates were excused from this prerequisite.  Mr. Britford's acknowledgment in his deposition that he deliberately failed the TABE signifies that he, in fact, was not similarly situated with those prisoners who took the TABE and received passing scores.  Therefore, the fact that those inmates may have been placed in educational programs of their choosing, while Mr.

Britford was not, does not indicate disparate treatment. The absence of any showing of disparate treatment as a threshold matter requires this Court to conclude that there are no genuine issues of fact relative to plaintiff's equal protection claim and that MTC is entitled to judgment on this claim as a matter of law.

VII.

Mr. Britford alleges that MTC and its agents denied him his First Amendment rights to grieve and access the courts by tampering with his incoming and outgoing mail, both legal and regular. He further claims that these defendants deprived him of due process in violation of the Fourteenth Amendment by interfering with his property interest in such mail. MTC argues that this claim fails as a matter of law because Mr. Britford has not shown, or even alleged, that he sustained an actual injury as the result of its actions.

It is well-established that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977). The right of access to the courts, however, is not "an abstract, freestanding right." Lewis v. Casey, 518 U.S. 343, 351 (1996). Rather, a prisoner who claims that his right of access to the courts has been violated must establish actual injury by demonstrating that the alleged violation hindered his ability to pursue a legal claim. Id.

In this case, Mr. Britford has not shown, or even attempted to show, that the alleged tampering with his mail by MTC and its agents led to any actual injury or hindered his ability to pursue a legal claim. Under these circumstances, there are no genuine issues of material fact. Because Mr. Britford would have the burden of proving an actual injury at trial, summary judgment in favor of MTC on this claim is appropriate.

Mr. Britford does allege in his complaint that a state agent

at PCI confiscated his legal materials on April 11, 2006, hindering his efforts to litigate his appeal from an adverse ruling in the Ohio Court of Claims.  He maintains that as a result of this action, he was unable to prosecute his motion for reconsideration and consequently lost his appeal.  While these allegations might satisfy the actual injury requirement, Mr. Britford has failed even to identify the individual who allegedly confiscated his legal materials.  Allegations of direct involvement in constitutional deprivations, rather than attempts to impose liability by virtue of the doctrine of <u>respondeat superior</u>, are necessary in order to hold an individual defendant liable under §1983.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).  Consequently, unless the plaintiff's complaint affirmatively pleads the personal involvement of a defendant in the allegedly unconstitutional action about which the plaintiff is complaining, the complaint fails to state a claim against that defendant and dismissal is warranted.  <u>See</u> <u>Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir. 1984).

In this case, Mr. Britford has not shown that any of the State Defendants were personally involved in the alleged confiscation of his legal materials.  Accordingly, the Court determines that there are no genuine issues of fact material to this claim and that the State Defendants likewise are entitled to judgment as a matter of law.

The Fourteenth Amendment proscribes governmental actions which deprive "any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV §1.  "Property interests are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law."  <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972).  Mr. Britford has not pointed to any existing rules or

17

understandings that stem from an independent source, such as Ohio law, for his claimed property interest in his incoming and outgoing mail. There may be some state-created policy for handling inmate mail that creates such a property interest. See, e.g., St. Hilaire v. Lewis, 26 F.3d 132 (table), 1994 WL 245614 at *4 (9th Cir. Jun. 7, 1994); Ali v. Milwaukee County Jail, 2005 WL 2902489 at *3 (W.D. Wis. Nov. 3, 2005). However, Mr. Britford's failure to identify any such policies or understandings means that he has not demonstrated the existence of a genuine issue of material fact as to an element upon which he would bear the burden of proof at trial. MTC, therefore, is entitled to summary judgment on plaintiff's due process claim.

## VIII.

Mr. Britford asserts a state-law claim of assault and battery against defendant Booth for this defendant's alleged intentional actions that resulted in the plaintiff's falling out of his top bunk. The State Defendants do not address the assault and battery claim in their motion for summary judgment. They apparently believed that Mr. Britford's state-law claim was one of negligence arising out of the aforementioned automobile accident that occurred while prison employees were transporting the plaintiff to CMC. Based on the relief sought in the complaint, this does not appear to be the case. While the State Defendants seek summary judgment on the purported negligence claim on statute of limitation grounds, they fail to make a similar argument on the assault and battery claim. For this reason, the Court finds that the State Defendants did not satisfy their initial burden of showing that no genuine issue of material fact exists with respect to this claim. Accordingly, the Court must conclude that defendant Booth is not clearly entitled to summary judgment on the assault and battery claim.

Notwithstanding the denial of summary judgment, the Court

may decline to hear state-law claims even where they are so related to the federal claims as to form part of the same case or controversy. See 28 U.S.C. §1367(c). Specifically, if a plaintiff's federal claims are dismissed before trial, then any state-law claims over which the Court has supplemental jurisdiction are also appropriately dismissed. See id.; Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996)("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them if the action was removed").

The Court is granting summary judgment to the State Defendants on all federal claims. Mr. Britford has brought his assault and battery claim solely against defendant Booth, who is one of the State Defendants. The record reflects that Mr. Britford did not respond to the defendants' motions for summary judgment or file his own motion for summary judgment despite several extensions of time to do so. A dismissal of the only state-law claim without prejudice consequently would not be unfair or inconvenient to Mr. Britford. Furthermore, the fact that certain federal claims against defendants other than the State Defendants or MTC will remain pending for now does not divest this Court of its discretion under §1367(c) to dismiss the state-law claim against defendant Booth. See Podell v. Citicorp. Diners Club, Inc., 859 F.Supp. 701, 706-07 (S.D.N.Y. 1994)(court declined to exercise supplemental jurisdiction over state claims against two defendants where federal claims had been dismissed against those defendants despite fact that two other defendants had answered complaint and were conducting discovery); Carney v. Experian Information Solutions, Inc., 57 F.Supp.2d 496, 503 n.11 (W.D. Tenn. 1999)("Even if there were no preemption, this court would decline to exercise jurisdiction against Exxon and G.E.

Capital"). The Court, then, will exercise its discretion and dismiss plaintiff's state-law assault and battery claim.

                                IX.

Based on the foregoing reasons, defendant Management Training Corp.'s motion for summary judgment (#65) is granted in its entirety. The State Defendant's motion for summary judgment (#66) is granted with respect to Mr. Britford's §1983 claims. Mr. Britford's state-law claim for assault and battery is dismissed without prejudice. The Clerk shall terminate defendants Collins, Croft, Vansickle, Blake, Gantly, Nortrup, Erwin, Wessel, Roddey, Brunton, Booth, Valentine, Lockhart, Lawson, and Management Training Corp. as parties to this action.

     IT IS SO ORDERED.

Date: March 25, 2009            **/s/ John D. Holschuh**
                                       John D. Holschuh, Judge
                                       United States District Court